IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| CONSUELA DEASON, as Personal Representative for the Estate of JAMES E. DEASON, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, a Delaware Corporation; ROBINSON INSULATION COMPANY, a Montana Corporation for Profit; and DOES A-Z,<br><br>Defendants. | CV-17-76-GF-BMM-JTJ<br><br>**FINDINGS AND RECOMMENDATION ON DEFENDANT BNSF'S MOTION TO DISMISS** |

## I. BACKGROUND

On April 27, 2015, Plaintiff Consuela Deason, as Personal Representative for the Estate of James Deason ("Ms. Deason") filed a Complaint against Defendant BNSF Railway Company ("BNSF") in the Eighth Judicial District, Cascade County, in the State of Montana. (*See* Doc. 12). Ms. Deason asserted a claim of relief in both negligence and strict liability in tort against BNSF. (*Id.*)

On August 16, 2017, BNSF properly removed the action to federal court

1

pursuant to 28 U.S.C. §§ 1332 and 1441, stating that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. (Doc. 1).  On August 23, 2017, BNSF filed a Motion to Dismiss for Failure to State a Claim, arguing that Ms. Deason had failed to state a claim of negligence, that it could not be held strictly liable for her alleged injuries, and that any claim she made was preempted by federal law.  (Doc. 5).  On October 4, 2017, Ms. Deason filed a Motion for Partial Summary Judgment on the issue of federal preemption alongside her Response to BNSF's Motion to Dismiss.  (Docs. 38 & 39).   That same day, Ms. Deason filed her Response Brief opposing BNSF's Motion to Dismiss regarding her negligence claim and common law strict liability.  (Doc. 40).  On October 25, 2017, BNSF filed its Reply.  (Doc. 45).

On January 17, 2018, the Court held a hearing on both motions in Great Falls, Montana, with counsel for all parties in attendance.  Both motions have been fully briefed and are ripe for adjudication.

## II.  FACTS

The case stems from an alleged toxic exposure of asbestos contained in vermiculite ore which BNSF transported out of Libby, Montana.  W.R. Grace & Co., a non-party to this action, owned and operated the vermiculite mine from 1963 until it closed in 1990.  It was later discovered that the vermiculite contained

asbestos, and Ms. Deason alleged that W.R. Grace & Co.'s mining process caused asbestos-dust to spread through its processing, bagging, storage, or in this case, its transportation facilities. BNSF was hired by W.R. Grace & Co. to transport the vermiculite, and Ms. Deason similarly alleged that due to BNSF's negligence, she was exposed to asbestos while living in Libby, Montana, from 1937 to 1952.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a cause of action may be dismissed if the claim does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cardan v. N.Y. Life Ins. Co.*, 2016 U.S. Dist. LEXIS 140731, *5 (D. Mont. Oct. 11, 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all factual allegations as true and construe the pleading in a light most favorable to the non-moving party. *Hosp. Bldg. Co. v. Trustees of the Rex Hosp.*, 425 U.S. 738, 740 (1976); *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989). "The court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## IV.  ANALYSIS

### A.  Negligence

In order to succeed on a claim of negligence under Montana law, a plaintiff must prove that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the breach was the proximate cause of the plaintiff's injuries; and (4) the plaintiff suffered injuries and damages.  *Scott v. Robson*, 597 P.2d 1150, 1154 (Mont. 1979) (quoting *Pickett v. Kyger*, 439 P.2d 57, 63 (Mont. 1968)).  A plaintiff's failure to establish any of these elements is fatal to her claim. *State ex rel. Burlington Northern, Inc. v. District Court*, 496 P.2d 1152, 1156 (Mont. 1972).

BNSF argues that Ms. Deason has failed to allege that BNSF owed her a duty of care and therefore cannot establish the first element of a negligence claim. (Doc. 5-1 at 4).  BNSF states that no duty existed because Ms. Deason's injuries were unforeseeable.  "A defendant has potential liability only for injuries to others which to defendant at the time were reasonably foreseeable."  (*Id.* at 5 (citing *Versland v. Caron Transport*, 671 P.2d 583, 588 (Mont. 1993)).  BNSF argues that it did not know the vermiculite it was transporting contained asbestos and it was therefore unforeseeable that transporting vermiculite would expose anyone in Libby, Montana, to toxic asbestos.  (Doc. 5-1 at 6).

4

Here, however, whether BNSF actually knew or should have known of the danger of asbestos and vermiculite is irrelevant. The Court is not adjudicating whether Ms. Deason will ultimately succeed in her negligence claim, but rather whether the allegations, accepted as true for the purposes of this motion, state a legal claim against BNSF. The question here is whether Ms. Deason's Complaint "raise[s] a reasonable expectation that discovery will reveal evidence of" a basis for liability. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (1995). Ms. Deason's Complaint alleges in pertinent part:

> 90. During the dates above stated, Plaintiff resided or remained in proximity to the real property of BNSF and was thereby exposed to asbestos dust from BNSF's property and operations. . . .
>
> 91. Throughout the years of exposure above state, the Plaintiff lived in an environment that caused her to be exposed to and to inhale asbestos dust.
>
> . . .
>
> 95. BNSF was negligent as follows:
>
>> (a) in failing to inquire, study and evaluate the dust hazard to human health;
>>
>> (b) in failing to take measures to prevent toxic dust from collecting upon and escaping from its property;
>>
>> (c) in failing to warn Plaintiff of the true nature of the hazardous effects of the dust; and
>>
>> (d) by acting in concert with Zolonite/Grace.

5

(Doc. 12 at ¶¶90-95). These allegations, if true, sufficiently give BNSF "fair notice of what [Ms. Deason's] claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Moreover, as to BNSF's argument on foreseeability, the Complaint sufficiently alleges that the danger of asbestos was foreseeable to BNSF:

> "At all times, BNSF knew or should have known of the asbestos in the vermiculite, and knew or should have known of the hazards to human health of asbestos exposure and had a continuing duty to gather information, to prevent toxic dust from collecting upon and escaping from its property, and to warn Plaintiff and others who could be harmed by said dust."

(*Id.* at ¶94). Based on the foregoing, the Court finds that Ms. Deason has sufficiently pled a claim of negligence against BNSF so as to defeat a Rule 12(b)(6) motion to dismiss.

### B. Common law strict liability

Restatement (Second) of Torts § 519(1) provides that "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." *See Matkovic v. Shell Oil Co.*, 707 P.2d 2, (Mont. 1985). As such, those who engage in abnormally dangerous activities are strictly liable for the harm caused by the abnormal danger. *See* Restatement (Second) of Torts § 519(2).

6

BNSF argues that it is a "common carrier" of freight, and is therefore exempted from the general rule regarding strict liability under § 521 of the Restatement: "The rules as to strict liability for abnormally dangerous activities do not apply if the activity is carried on in pursuance of a public duty as imposed upon the actor as a public officer or employee or as a common carrier." Because it is a common carrier, BNSF argues, it is required to "accept and carry whatever is offered" under both Montana and federal law. (Doc. 5-1 at 9 (quoting Mont. Code Ann. § 69-11-403); *see also* 49 U.S.C. § 11101(a)). As such, BNSF argues it cannot be strictly liable for storing and transporting the vermiculite when it was required to by state and federal law, and therefore should be exempt from strict liability under § 519. (*Id.*)

Ms. Deason argues that Montana has not adopted § 521 and would not do so based on its own prior precedent. The Montana Supreme Court has not explicitly adopted § 521, nor has it addressed the issue. (Doc. 40 at 13). Furthermore, Ms. Deason argues that § 521 is a "public duty exception" and does not apply to BNSF's voluntary actions in accepting the transport for money. (*Id.* at 15-14).

The issue of whether the State of Montana would adopt § 521 is immature at this time. The question of what constitutes an abnormally dangerous activity is a question of law for the court to decide. *Chambers v. City of Helena*, 49 P.3d 587,

7

591 (Mont. 2002) *overruled on other grounds by Giambra v. Kelsey*, 162 P.3d 134 (Mont. 2007). However, in this stage of the litigation, sufficient facts have not been established for the Court to make its determination as a matter of law. The issue before the Court is to determine whether Ms. Deason has stated a claim for relief so as to defeat a Rule 12(b)(6) motion, not to decide whether the transport of vermiculite is an abnormally dangerous activity. As such, an inquiry as to whether Montana would adopt § 521 is premature at this time. The Court finds that Ms. Deason has sufficiently alleged facts to state a claim for relief as to strict liability in tort. Therefore, the Court recommends that BNSF's Motion to Dismiss be denied with respect to the issue of strict liability.

### C. Federal preemption

Finally, BNSF argues that state law claims are precluded by federal law, specifically the Hazardous Materials Transportation Act, 49 U.S.C. §§ 5101-5128 ("HMTA") or the Federal Railroad Safety Act of 1970, 49 U.S.C. §§ 20101-20153 ("FRSA"), which regulate BNSF's activities as a common carrier as to the transportation of asbestos. (Doc. 5-1 at 10).

When Congress exercises its constitutional authority to legislate an issue and has manifested its intention to fully address the subject, the state's right to regulate interstate commerce ceases. *Northern Pac. Ry. Co. v. State of Washington*, 222

U.S. 370, 378 (1912). However, there exists a presumption against preemption: "both the United States Supreme Court and [the Montana Supreme] Court have consistently held that preemption is not favored." *Reidelbach v. Burlington N. & Santa Fe Ry. Co.*, 60 P.3d 418, 423 (Mont. 2002) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). "Federal preemption is an affirmative defense upon which defendant bears the burden of proof." *Fifth Third Bank v. CSX Corp.*, 306 F.Supp.2d 841, 849 (N.D. Ind. 2004). In order to overcome the presumption against preemption, the defendant must show "evidence of a clear and manifest intent of Congress to preempt state law." *Reidelbach*, 60 P.3d at 424 (citing *Favel v. Am. Renovation & Construction Co.*, 59 P.3d 412, 423 (Mont. 2002)).

Absent a clear and manifest congressional purpose, a federal law may still impliedly preempt a state law under certain circumstances. As stated by the United States Supreme Court, "[w]e have recognized that a federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively . . . or when state law is in actual conflict with federal law." *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 899 (2000) (citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)).

### 1. Hazardous Materials Transportation Act

According to the general preemption provision of the HMTA, there is no

express language of preemption except for instances where complying with a state requirement and an HMTA requirement "is not possible," or when a requirement of the state "is an obstacle to accomplishing and carrying out of [the HMTA]." 49 U.S.C. § 5125(a). The Supreme Court has previously held that this sort of language does not preclude all common law causes of action and is indeed compatible with state law claims. *See Medtronic*, 518 U.S. at 486-89.

BNSF argues that the more specific preemption clause of § 5125(b) preempts Ms. Deason's claims. Section 5125(b) states that:

(1) . . . A law, regulation, order, or other requirement of a State . . . about any of the following subjects, that is not substantively the same as a provision of this chapter, a regulation prescribed under this chapter, or hazardous materials transportation security regulation . . . is preempted:

    (A) the designation, description, and classification of hazardous material.

    (B) the packing, repacking, handling, labeling, marking, and placarding of hazardous material.

    (C) the preparation, execution, and use of shipping documents related to hazardous material and requirements related to the number, contents, and placement of those documents.

    (D) the written notification, recording, and reporting of the unintentional release in transportation of hazardous material and other written hazardous materials transportation incident reporting involving State or local emergency responders in the initial response to the incident.

>   (E)   the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing a package, container, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce.

The HTMA defines "hazardous material" as a "substance or material the Secretary designates under section 5103(a) of this title." 49 U.S.C. § 5102(2). However, the specific regulation regarding asbestos specifically excludes asbestos "that is immersed or fixed in a natural or artificial binder material, such as . . . mineral ore." 49 C.F.R. 172.102(c)(1)(156) (2016).

BNSF argues that because the Department of Transportation ("DOT") specifically exempted mineral-bound asbestos from its regulatory control under the HMTA, Congress clearly and manifestly intended that transportation of said asbestos be entirely free from any and all regulation. According to BNSF, "[t]he absence of a federal regulation for immersed asbestos thus constitutes an affirmative decision of the DOT . . . [and in] such instances where there is a clear and manifest intent that an activity not be subject to regulations, the activity becomes privileged under federal law, and state regulation and remedies are precluded." (Doc. 5-1 at 13). BNSF suggests this creates a negative preemption, wherein the agency, in deciding not to regulate some activity, has thereby decided that the activity is to be free from all regulation. However, in the words of the

11

Supreme Court, this would have "the perverse effect of granting complete immunity . . . to an entire industry that, in the judgment of Congress, needed more stringent regulation[.]" *Medtronic*, 518 U.S. at 487-89.

More simply stated, since asbestos immersed in mineral ore–like the vermiculite in this case–is not a hazardous material, then the Hazardous Materials Transportation Act has no regulatory effect. As such, there is no conflict with any state law regarding vermiculite and the HMTA. It is clear to the Court that state law claims regarding immersed asbestos is compatible with subsection (a) and is specifically exempted from regulation under subsection (b). Based on this language, the Court finds that the HMTA does not expressly or impliedly preempt state law with respect to Ms. Deason's state law claims.

Furthermore, even if the HMTA did address vermiculite, it would still not apply to the facts of this action absent a specific intent by Congress to make the HMTA apply retroactively. As stated by the United States Supreme Court, "[s]ince the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 270 (1994). Absent an express command of retroactivity, a court must determine whether the HMTA would have retroactive effect by considering: (1) whether it would impair the a party's

preexisting rights, (2) increase a party's liability for past conduct, or (3) impose new duties with respect to already completed transactions. *Id*. at 280.

The HMTA was enacted in 1975, and Ms. Deason's alleged injuries arose from conduct between 1937-1952. (Doc. 39 at 30-31). Assuming arguendo that the HMTA would otherwise preempt all state law claims, then the Court must analyze whether Congress intended it to apply retroactively. The HMTA does not have a specific provision regarding retroactivity, so there can be no explicit congressional intent. Furthermore, the Court finds that applying the HMTA regulations retroactively would impair Ms. Deason's right to recovery if they were to preempt her state law claims. Therefore, the Court recommends that BNSF's Motion to Dismiss for Failure to State a Claim be denied with respect to preemption under the HMTA.

### 2. Federal Railroad Safety Act

BNSF also argues that the FRSA preempts Ms. Deason's claims. It argues that Congress enacted the FRSA in 1970 "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. Under the FRSA, the Secretary of Transportation has broad powers to prescribe rules, regulations, orders, and standards for all areas of railroad safety, which it has delegated to the Federal Railroad Administration (FRA). 49 U.S.C. §

20103(a); 49 C.F.R. § 1.49(m). BNSF argues that regulations within the FRSA are "so extensive that they indicate Congress' intent to occupy the field exclusively, preempting any other state requirements." (Doc. 5-1 at 16-17 (citing *Roth v. Norfalco LLC*, 651 F.3d 367, 370 (3d Cir. 2011)).

Moreover, BNSF points out that the FRSA includes an express preemption clause:

> (a) **National Uniformity of Regulation**.—
>
> (1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.
>
> (2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order—
>
> (A) is necessary to eliminate or reduce an essentially local safety or security hazard;
>
> (B) is not incompatible with a law, regulation, or order of the United States Government; and
>
> (C) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106(a)(1). BNSF argues that this section has been applied broadly

and not only preempts state laws that impair or are inconsistent with FRA regulations, but all "state regulations aimed at the same safety concerns addressed by FRA regulations." *Burlington N. R.R. Co. v. State of Mont.*, 880 F.2d 1104, 1105-06 (9th Cir. 1989); *see also In re Derailment Cases*, 416 F.3d 787, 793 (8th Cir. 2005). BNSF contends that Ms. Deason's state law claims are preempted (and her claims are therefore precluded) "if the federal regulations substantially subsume the subject matter of the relevant state law." *In re Derailment Cases*, 416 F.3d at 793 (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).

Therefore, BNSF must show that a particular federal regulation "pervasively covers" the subject matter of Ms. Deason's claims. Courts have held that it is not enough to show that a regulation "touches upon" or "relates to" that subject matter; "'covering' is a more restrictive term which indicates that preemption will lie only if the federal regulations 'substantially subsume the subject matter of the relevant state law.'" *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). Courts "are not prepared to find preemption solely on the strength of a general provision." *In re Train Derail. Lit.*, 626 N.E.2d 85, 93 (Oh. 1994).

The Court finds that Montana state laws are not inconsistent with the FRSA regulations, and are therefore not preempted by the FRSA. Again, BNSF's argues that a negative preemption in the FRSA precludes any state law claim. "[B]ecause

the DOT has explicitly determined that special measures–handling, loading, transporting, warning, etc.–are not warranted [for mineral-bound asbestos], Plaintiff's state law claims with respect to such measures are preempted." (Doc. 3-1 at 16). The Court finds this argument unavailing. A state law regarding negligence cannot be "incompatible" with the FRSA when the FRSA explicitly excludes address mineral-bound asbestos. *See* 49 U.S.C. § 20106(a)(2)(B) ("A State may adopt [a law] . . . when the law . . . is not incompatible with a law, regulation, or order of the United States Government").

Moreover, BNSF has not shown specific FRSA regulations which would substantially subsume Ms. Deason's state law claims. For example, BNSF argues that Ms. Deason's allegation that it was negligent for failing "to prevent dust from escaping its railcars [is] preempted by the extensive regulations concerning train speed." (Doc. 5-1 at 16-17). Ms. Deason has alleged varied claims stemming from many distinct acts of negligence of BNSF resulting in exposure to asbestos. (Doc. 12 at ¶¶90-102). BNSF has not shown any specific FRSA regulation which substantially subsumes or covers Ms. Deason's specific claims of BNSF's negligent activities. Therefore, the Court finds that the FRSA does not preempt Ms. Deason's state law claims.

However, as stated above, the Court need not decide whether the FRSA

preempts state law as argued by BNSF, because even if it did, the Court finds that the FRSA is inapplicable in this case because it does not apply retroactively. The FRSA was enacted in 1970, and Ms. Deason's alleged injuries arose from conduct between 1937-1952. (Doc. 39 at 30-31). It is clear that, based on BNSF's argument, the FRSA would completely preclude any state law claim regarding railroad safety, which would seriously impair Ms. Deason's preexisting right to make a state law claim. Therefore, because Congress did not explicitly state that the FRSA was intended to apply retroactively, the Court will not give it such effect.

The Court finds that the FRSA does not preempt Ms. Deason's state law claims. Therefore, based on the foregoing, the Court recommends that BNSF's Motion to Dismiss for Failure to State a Claim be denied with respect to the issue of federal preemption under the HMTA or the FRSA.

## V. FINDINGS AND RECOMMENDATION

Therefore, in relation to BNSF's Motion to Dismiss for Failure to State a Claim, the Court **FINDS**:

1. Ms. Deason has sufficiently pleaded a negligence claim so as to survive a Rule 12(b)(6) motion to dismiss.

2. Ms. Deason has sufficiently pleaded a claim of strict liability in tort so as to survive a Rule 12(b)(6) motion to dismiss.

3.  Ms. Deason's claims are not preempted by the HMTA or the FRSA.

The Court **RECOMMENDS**:

1.  BNSF's Motion to Dismiss for Failure to State a Claim (Doc. 5) should be DENIED.

2.  Ms. Deason's Motion for Partial Summary Judgment re Federal Preemption (Doc. 38) should be GRANTED.

DATED this 14th day of February, 2018.

John Johnston
United States Magistrate Judge